# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

No. 2013-1077

(Serial No. 11/491,718)

IN RE FRANK TOPPO

---

Appeal from the United States Patent and Trademark Office,

Patent Trial and Appeal Board.

---

## BRIEF OF APPELLANT

---

Sean A. Passino

Benjamin J. Hauptman

Benjamin P. Kota

Lowe Hauptman Ham & Berner, LLP

1700 Diagonal Road, Suite 300

Alexandria, Virginia 22314

703-684-1111

Fax: 703-518-5499

Email: spassino@ipfirm.com

*Attorneys for Appellant Frank Toppo*

## <u>CERTIFICATE OF INTEREST</u>

Counsel for Frank Toppo certifies the following:

1.      The full name of every party or amicus represented by Counsel is:

Frank Toppo.

2.      The name of the real party in interest represented by me is:

None.

3.      All parent corporations and any publicly held companies that own 10

percent or more of the stock of the party represented by me are:

None.

4.      The names of all law firms and the partners or associates that

appeared for the party or amicus now represented by me in the trial court or

agency or are expected to appear in this Court are:

Sean A. Passino
Benjamin J. Hauptman
Benjamin P. Kota
LOWE HAUPTMAN HAM & BERNER, LLP
1700 Diagonal Road, Suite 300
Alexandria, Virginia 22314

The following individuals filed papers in the USPTO. They are not expected to appear before this Court.

> Charles H. Thomas
> Daniel M. Cislo
> Sean D. O'Brien
> CISLO & THOMAS LLP
> 233 Wilshire Boulevard, Suite 900
> Santa Monica, CA 90401-1211

Respectfully submitted,

___/s/ Sean A. Passino_____                    dated January 25, 2013

Lowe Hauptman Ham & Berner, LLP

1700 Diagonal Road, Suite 300

Alexandria, Virginia 22314

703-684-1111

Fax: 703-518-5499

Email: spassino@ipfirm.com

*Attorney for Appellant Frank Toppo*

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................i

TABLE OF AUTHORITIES ................................................. ii

STATEMENT OF RELATED CASES ...............................1

JURISDICTIONAL STATEMENT ....................................2

STATEMENT OF THE ISSUES ........................................3

STATEMENT OF THE CASE ............................................4

STATEMENT OF THE FACTS ..........................................6

SUMMARY OF THE ARGUMENT ..................................16

ARGUMENT ...................................................................18

  I.    STANDARD OF REVIEW ......................................18

  II.    ANALYSIS ...........................................................18
    A.  The Board Erred When It Failed To Consider Evidence Rebutting The Board's Findings, Namely That Lee Does Not Provide A Reason To Select Trans-resveratrol For A Treatment For Alzheimer's Disease ........................19

    B.   The Board Erred When It Failed To Consider Evidence Rebutting The Board's Findings, Namely Cavazza Does Not Provide A Reason To Start With Trans-resveratrol For A Treatment For Alzheimer's Disease ................22

CONCLUSION AND STATEMENT OF RELIEF SOUGHT .............................26

CERTIFICATE OF COMPLIANCE ..................................27

CERTIFICATE OF SERVICE ...........................................28

ADDENDUM ...................................................................29

## <u>TABLE OF AUTHORITIES</u>

**Cases**

Graham v. John Deere Co. of Kansas City,

   383 U.S. 1 (1966) ...................................................................................18

In re Glaug,

   283 F.3d 1335 (Fed. Cir. 2002) ...........................................................19

In re Kotzab,

   217 F.3d 1365 (Fed. Cir. 2000) ...........................................................18

In re Piasecki,

   745 F.2d 1468 (Fed. Cir. 1984) ...........................................................19

In re Sullivan,

   498 F.3d 1345 (Fed. Cir. 2007) ...................................................... 20, 22

KSR International Co. v. Teleflex Inc.,

   550 U.S. 398 (2007) ...................................................................... 19, 22

**Statutes**

35 U.S.C. §102(b) ...................................................................................15

35 U.S.C. §103(a) ............................................................................ 8, 15, 18

**Rules**

37 C.F.R. §1.132 ......................................................................................9

37 C.F.R. §41.37 ....................................................................................14

37 C.F.R. §41.41 ....................................................................................15

## <u>STATEMENT OF RELATED CASES</u>

Appellant provides the following:

(a)     that there have been no previous appeals in this case; and

(b)     that Appellant is aware of no other case that will be directly affected by this Court's decision in this case.

# <u>JURISDICTIONAL STATEMENT</u>

This Court has jurisdiction under 28 U.S.C. §1295(a)(4)(A).  The judgment or order appealed from (*Ex parte Toppo*, No. 2012-007579 (BPAI Aug. 14, 2012)) is final.  A copy of which is attached hereto as an Addendum.  A Notice of Appeal was filed October 12, 2012.  The United States Patent and Trademark Office filed the Notice Forwarding Certified List on November 21, 2012.

## **STATEMENT OF THE ISSUES**

Whether the Board erred in affirming the examiner's rejection of claim 13-33 as obvious over U.S. Pat. No. 6,515,020 to Cavazza in view of U.S. Pat. No. 6,184,248 to Lee under 35 U.S.C. § 103(a) when it failed to consider rebuttal evidence showing the opposite conclusion, in particular:

(a)  no reasonable person would have determined that Lee's "resveratrol" is trans-resveratrol as recited in Appellant's claims, because trans-resveratrol does not satisfy Lee's functional definition; and

(b) the teachings of Cavazza do not provide a credible basis for predicting potential treatments for Alzheimer's disease, let alone a reason to use trans-resveratrol for a treatment for Alzheimer's disease.

## STATEMENT OF THE CASE

This is an appeal from the United States Patent and Trademark Office, Board of Appeals and Interferences[1] based on a Final Decision dated August 14, 2012. A1-7.  The Board affirmed the rejection of claims 13-33 under 35 U.S.C. § 103(a) over the combination of U.S. Pat. No. 6,515,020 to Cavazza (hereinafter "Cavazza") in view of U.S. Pat. No. 6,184,248 to Lee (hereinafter "Lee").  A7.

On July 24, 2007, Appellant filed United States Application No. 11/491,718, entitled "Method for Prevention and Treatment of Alzheimers."  A8-40.  On October 4, 2010, after several actions, the examiner rejected claims 13-32 as obvious under 35 U.S.C. §103(a) and anticipated under 35 U.S.C. §102(b).  A474-484.  On February 28, 2011, Appellant filed an amendment adding claim 33, traversing the rejections of claims 13-32, and providing three declarations under 37 C.F.R. §1.132 to supplement the record.  A485-737.  On May 6, 2011, the examiner maintained the rejections of claims 13-33 in a Final Office Action. A837-865.  On August 8, 2011, Appellant filed a notice of appeal to the Board, A866-870, and on November 8, 2011, Appellant filed an Appeal Brief under 37 C.F.R. §41.37.  A882-1102.  On February 2, 2012, the examiner mailed the Examiner's Answer.  A1112-1132.  On April 4, 2012, Appellant filed the Reply Brief under 37 C.F.R. §41.41.  A1135-1157.  On July 24, 2012, an Oral Hearing

---

1   Pursuant to the America Invents Act, the Board has been renamed the Patent Trial and Appeal Board (hereinafter "the Board").

4

was conducted.  A1158-1159.  On August 14, 2012, the Board vacated the examiner's rejection under 35 U.S.C. §102(b) but affirmed the rejection of claims 13-33 as obvious under 35 U.S.C. §103(a) in a final decision.  A1-7.

A Notice of Appeal to this Court was timely filed October 12, 2012.  A1168-1179.  Each rejected claim 13-33 stands or falls together.

## STATEMENT OF THE FACTS

On July 24, 2007, Appellant filed United States Application No. 11/491,718, entitled "Method for Prevention and Treatment of Alzheimers." A8-40. Representative claim 13 reads as follows:

> 13. A method of treating a human in need of treatment for Alzheimer's disease, comprising administering to the human *Trans-resveratrol* in a daily amount between about 200 mg and about 1,000 mg.

A486 (emphasis added).

Alzheimer's disease "has no known cure." A15, ll. 6-7. The deposition of plaque from "Amyloid β peptides (Aβ) in the brain is the hallmark of Alzheimer's disease …." A17, ll. 4-5. "High cholesterol levels in the brain increase the [plaque] deposition, which in turn increases the risk for Alzheimer's disease." A17, ll. 12-13. Inventor Frank Toppo realized that the administration of trans-resveratrol increases the amount of "good" cholesterol, i.e., heavy density lipoproteins (HDL), but decreases the amount of "bad" cholesterol, i.e., light density lipoproteins (LDL). A14, ll. 10 – A15, l. 2; A1449, col. 1, ll. 13-24; ll. 43-46. It was not previously known, but realized by Toppo, that "trans-resveratrol would have an effect on brain cellular cholesterol efflux and its association with

[plaque] formation and clearance." A18, ll. 10-12. In other words, it was not previously known that trans-resveratrol was involved in the removal of plaque from the brain and was therefore useful in treating subjects having Alzheimer's disease.

Trans-resveratrol is a specific compound having alternative names, such as 3,4',5-trihydroxy-trans-stilbene. A1180. As represented in the figure below,

$$HC=CH \begin{array}{c} R_1 \\ \\ R_2 \end{array}$$

trans ,

trans-resveratrol has a carbon-carbon double bond (C=C) and its functional groups ($R_1$ & $R_2$) located on opposite sides of the carbon-carbon double bond.

Cis-resveratrol is also a specific compound. A1181. As represented in the figure below,

$$\begin{array}{cc} R_2 & R_1 \\ \\ HC=CH \end{array}$$

cis ,

cis-resveratrol differs from trans-resveratrol, because, although its functional groups are the same as those in trans-resveratrol, cis-resveratrol's functional groups are located on the same side of the carbon-carbon double bond. A1181.

7

The referenced art provides alternative definitions of the term "resveratrol." For example, Cavazza (A1509-1512) defines the term "resveratrol" as "both trans-3,4'[,]5-trihydroxystilbene (i.e. resveratrol proper) and the cis isomer, the respective glycosides and extracts and powders containing resveratrol obtained from any suitable plant species." A1510, col. 1, ll. 61-65; A3. Here, trans-3,4',5-trihydroxystilbene is colloquially known as trans-resveratrol.

On October 4, 2010, after several actions, the examiner rejected claims 13-32 as obvious over Cavazza (US Pat. No. 6,515,020) in view of Lee (US Pat. No. 6,184,248) under 35 U.S.C. §103(a)[2] (A478) and as anticipated under 35 U.S.C. §102(b) by Lee (A477). The examiner found that Lee (A1453-1499) claims "a method for treating immune or inflammatory conditions associated with Alzheimer's Disease … comprising administering … a specific inhibitor of cyclo-oxygenase type 2 activity [COX-2], namely, resveratrol (see claims 6, 12 and 18)." A477. The Examiner also stated that "[i]n general, treatment regimens according to [Lee] comprise[]administration to human or other mammal in need of such treatment from about 1 mg to about 1000 mg of the active substance" such as "resveratrol." A478.

---

2    The rejection cited U.S. Pat. No. 6,048,903 to Toppo and U.S. Pat. No. 6,472,421 to Wolozin, but applied Lee. The rejection was clarified during the appeal process. A1133-1134.

Regarding the obviousness rejection, claim 1 of Cavazza reads in part "a therapeutic method of treating Alzheimer's disease comprising admin[is]tering to a patient in need thereof an effective amount of … "3,4',5-trihydroxystilbene (resveratrol)…." A478-479. The examiner, citing the claim, stated that "Cavazza teaches that the compound 'resveratrol' is … trans-3,4'-5-trihydroxystilbene (i.e., resveratrol proper) (column 1, lines 60-65)" (A479) and stated that "Cavazza teaches lower amounts of resveratrol but does not [t]each the higher daily amounts…." A479. The examiner cited where Cavazza lists a formulation having 5 mg of "resveratrol." A479.

The examiner also found that "[w]ith regard to the specific daily dosage amounts of resveratrol is obvious in view of Lee et al which teaches that those daily amounts of resveratrol is well known in the art for the treatment of AD at the time the invention was made." A481. The examiner also found that "[o]ne would have been motivated to employ resveratrol for the treatment of Alzheimer's disease in order to achieve an expected benefit of resveratrol having the therapeutic effect in the treatment of Alzheimer's disease …." A480.

On February 18, 2011, Appellant filed an amendment traversing the rejections and providing declaration evidence under 37 C.F.R. §1.132. A485-737. The first declaration was made by Dr. Harry E. Ensley, an Associate Professor of Chemistry on the faculty of Tulane University since 1975. A508-603. Dr. Ensley

9

is an expert in organic chemistry, pharmacology, and the chemistry of biologically active natural products.  A414-418, 434-443; A509.

The second declaration was made by Charles Bernick, MD, employed by The Cleveland Clinic Lou Ruvo Center for Brain Health Medical Center, Cleveland Clinic Lou Ruvo Center for Brain Health in Las Vegas, Nevada, as a Medical Doctor.  A604-714.  Dr. Bernick is an expert in neurology and in particular Alzheimer's disease. Dec 1¶8.  A445-446, A450-457; A605.  The third declaration was made by Inventor Frank Toppo, MD, the Medical Director for the Nathan Adelson Hospice program for Nye County, Nevada.  A715-728.

Lee (A1453-1499) fails to describe an embodiment within the scope of the claims.  Drs. Ensley and Toppo concluded that Lee does not describe administering trans-resveratrol in a particular amount.  A515-516, ¶¶ 27-29; A722-723, ¶¶ 24-27.  Dr. Ensley declared that Lee never distinguishes between the cis- or trans-geometric isomer of resveratrol.  A511, ¶ 14.  Even though the passage of Lee cited by the examiner identifies "a specific inhibitor of [COX-2] activity, namely, resveratrol," both Dr. Ensley and Dr. Toppo declared that based on Lee in its entirety, no data supports the conclusion that 'resveratrol' is 'specific' to COX-2…."  A516, ¶30; A723, ¶27.  In fact, Dr. Ensley cited contrary evidence.  A516, ¶30.

The contrary evidence cited by Dr. Ensley in his Declaration is an article "Resveratrol is a Peroxidase-mediated Inactivator of COX-1 but Not COX-2, A Mechanistic Approach to the Design of COX-1 Selective Agents", L.M. Szewczuk, L. Forti, L.A. Stivala and T.M. Penning, The Journal of Biological Chemistry, 279, 22727-22737 (2004).  A1295-1305.  Szewczuk's abstract states that "[Resveratrol (3,4',5-trihydroxy-trans-stilbene)] is a potent inhibitor of both catalytic activities of COX-1, the desired drug target for the prevention of cardiovascular disease, but only a weak inhibitor of the peroxidase activity of COX-2, the isoform target for nonsteroidal anti-inflammatory drugs."  A1295.

With regard to Cavazza, Dr. Ensley declared that the list of compounds falling under Cavazza's "resveratrol" is actually infinite, since there are "theoretically an infinite number of esters of resveratrol."  A516-517, ¶34; cf. A724-725, ¶31.

Drs. Ensley, Bernick, and Toppo studied Cavazza's examples (A1571, col. 3, l. 20 – A1512, col. 5, l. 11) and made multiple observations.  Cavazza discloses using endothelien-1 (ET-1) to influence the motility of mice.  A1511, col. 3, l. 48 – col. 4, l. 15.  According to Drs. Ensley and Toppo, ET-1 is capable of constricting blood vessels and simulating ischemia, i.e., damage to tissue resulting from a restriction in blood supply to the tissue.  A518, ¶37; A724-725, ¶31.  Cavazza concludes as follows:

11

> In the case of the combined administration of resveratrol and propionyl L-carnitine, the number of movements of the animals was practically identical to that of control animals, thus demonstrating an unexpected synergistic potentiation of the effects.

A1511, col. 4, ll. 11-15.

According to Drs. Ensley, Bernick, and Toppo, this conclusion is neither relevant nor reliable for predicting potential treatments for Alzheimer's disease. A518, ¶37; A605, ¶12; A725, ¶32. Drs. Ensley, Bernick, and Toppo declared that ET-1-induced damage to mice cerebrums is not relevant to Alzheimer's disease. A518-519, ¶39; A606, ¶14; A726, ¶34. Drs. Ensley, Bernick, and Toppo declared that Cavazza's technique is neither a relevant nor reliable predictor of potential treatments for Alzheimer's disease. A518-519, ¶39; A606, ¶14; A726, ¶34.

Cavazza discloses using hydrogen peroxide on pheochromocytoma cells (PC-12) to test the survivability of the PC-12 cell line. A1511, col. 4, ll. 16-38. Cavazza concludes as follows:

> The survival rate was 88% with the combination of acetyl L-carnitine and resveratrol at the concentrations used previously, thus demonstrating a synergistic effect of the substances considered.

A1511, col. 4, ll. 33-36.

Drs. Ensley and Toppo declared that this conclusion is neither relevant nor reliable for predicting potential treatments of Alzheimer's disease. A519, ¶40; A726, ¶35; cf. A606, ¶15. Drs. Ensley, Bernick, and Toppo declared that Cavazza's technique

is neither a relevant nor reliable predictor of potential treatments for Alzheimer's disease. A519, ¶42; A606, ¶17; A727, ¶37.

Cavazza discloses using cisplatin and both a pain-flick test and a rotating bar test to determine the balance of mice. A1511, col. 4, l. 39 – A1512, col. 5, l. 11. Cavazza concludes as follows:

> These tests, too, demonstrate an unexpected synergism between carnitines and resveratrol.

A1512, col. 5, ll. 10-11.

Drs. Ensley, Bernick, and Toppo declared that this conclusion is neither relevant nor reliable for predicting potential treatments of Alzheimer's disease. A519-520, ¶43; A606-607, ¶18; A727-728, ¶38. Drs. Ensley, Bernick, and Toppo declared that the length of time mice having cisplatin induced brain lesions can remain on a rotating bar is not relevant to Alzheimer's disease. A520, ¶45; A607, ¶20; A728, ¶40. Drs. Ensley, Bernick, and Toppo declared that Cavazza's technique is neither a relevant nor reliable predictor of potential treatments for Alzheimer's disease. A520, ¶45; A607, ¶20; A728, ¶40.

According to Drs. Ensley, Bernick, and Toppo, in its entirety, each of Cavazza's principles and techniques have not attained widespread acceptance for predicting potential treatments of Alzheimer's disease. A520, ¶46; A607, ¶21; A728, ¶41.

13

On May 6, 2011, the examiner made a Final Office Action maintaining the rejections.  A837-865.  The examiner dismissed the declarations as to Lee, because she "made an anticipatory rejection…."  A840.  The examiner affirmed that "[o]ne of ordinary skill in the art would be motivated to start with resveratrol (trans-resveratrol) taught by Lee et al. having a therapeutic benefit in the treatment of Alzheimer's disease because such subject matter was well known at the time the invention was made as it is claimed by Lee …)."  A849.  The examiner concluded that "choosing trans-resveratrol from the cis or trans resveratrol disclosed by Cavazza for the treatment of Alzheimer's disease would have been recognized as predictable to one of ordinary skill in the art."  A849.

On August 8, 2011, Appellant filed a notice of appeal to the Board (A866-870), and on November 8, 2011, Appellant filed an Appeal Brief under 37 C.F.R. §41.37.  A882-918.  The Brief relied on the Declarations of Drs. Ensley, Bernick, and Toppo and argued that Lee fails to describe an embodiment falling within the scope of the claims.  Regarding obviousness, the Brief emphasized the remarks noted above, emphasizing that there is no reason to start with trans-resveratrol (A901) or Cavazza's resveratrol for treating Alzheimer's disease.  A902-906.

On February 2, 2012, the examiner mailed the Examiner's Answer maintaining the rejections.  A1112-1132.

14

On April 4, 2012, Appellant filed the Reply Brief under 37 C.F.R. §41.41. On July 24, 2012, an Oral Hearing was conducted. A1135-1153.

On August 14, 2012, the Board vacated the examiner's rejection under 35 U.S.C. §102(b) but affirmed the rejection of claims 13-33 as obvious under 35 U.S.C. §103(a) in a final decision. A1-7. The Board found that claim 13 is representative. A1; A3.[3]

The Board found that "Cavazza suggests a 'method of treating ... Alzheimer's disease ... compris[ing] administering to a patient in need thereof an effective amount of ... (B) a trihydroxy or tetrahydroxystilbene'… (Cavazza, col. 6, ll. 30-31 and col. 3, ll. 4-7; Ans. 6)" and that "Cavazza suggests that '[c]omponent (B) is preferably 3, 4', 5- trihydroxystilbene (resveratrol)' (Cavazza, col. 2, ll. 59-60)." A2. The Board also found that "Cavazza defines the term 'resveratrol' as 'both trans-3,4'[,]5-trihydroxystilbene (i.e. resveratrol proper) and the cis isomer, the respective glycosides and extracts and powders containing resveratrol obtained from any suitable plant species' (id. at col. 1, ll. 61-65 (emphasis added); see also Ans. 6)." A2. These findings, according to the Board, suggested to one of ordinary skill in the art to choose "trans-resveratrol" as a component in a

---

3    The Solicitor and counsel for the Appellant have discussed this typographical error and agree that the context of the decision makes it clear that claim 13 is representative.

composition for treating Alzheimer's disease.  A3 ("Cavazza suggests the use of trans-resveratrol to treat Alzheimer's disease (FF 1-3).").

The Board also determined that "Lee teaches a method of treating Alzheimer's disease comprising administering resveratrol to a human in an amount from about 1 mg to about 1000 mg per day, in single or multiple doses from 1 mg, 5 mg, 10 mg, 500 mg or 1000 mg (Ans. 6-7; Lee, col. 18, ll. 20-25)."  A3.

The Board never challenged any specific factual findings in the declarations, because a reference "is not limited to its exemplified embodiments."  A3-4. The Board dismissed Dr. Ensley's declaration evidence, because "Appellant fails to establish that Lee's resveratrol falls outside the scope of the term "resveratrol" as defined by Cavazza (see FF 3)." A5.

The Appeal to this Court followed.

## SUMMARY OF THE ARGUMENT

The Board erred when it failed to consider evidence directly opposite to two Board determinations regarding the scope and content of the prior art.  Had the Board considered the evidence, it would have found that a person having ordinary skill in the art would have concluded the claimed subject matter is nonobvious in view of the art.

First, the Board erred by failing to consider evidence rebutting its finding that Lee teaches a method of treating Alzheimer's disease comprising administering a composition comprising "resveratrol." Lee discloses the use of "resveratrol." Lee defines "resveratrol" functionally—i.e., as a specific inhibitor of cyclo-oxygenase type 2 ("COX-2") activity. Had the Board considered the rebuttal evidence, it would have learned that trans-resveratrol is not a COX-2 inhibitor and a person having ordinary skill in the art reading Lee would not have chosen a composition comprising trans-resveratrol for modification or combination for a treatment for Alzheimer's disease. Indeed, Lee provides a reason not to select trans-resveratrol for a treatment for Alzheimer's disease.

Second, the Board erred by failing to consider evidence rebutting its finding that Cavazza suggests the use of a composition comprising trans-resveratrol to treat Alzheimer's disease. Had the Board considered the evidence, it would have learned Cavazza is not predictive for Alzheimer's disease. That is because multiple experts declared that the conclusions reached and techniques used in Cavazza are neither relevant nor reliable for predicting potential treatments for Alzheimer's disease. The teachings of Cavazza do not provide a credible basis for predicting potential treatments for Alzheimer's disease, let alone a reason to select a composition comprising trans-resveratrol for modification by Lee and Cavazza to arrive at the claimed subject matter.

As a result, the failure to consider the rebuttal evidence is error. Moreover, had the Board considered the rebuttal evidence, it would have reached the conclusion that a person having ordinary skill in the art would have concluded the claimed subject matter is nonobvious in view of the art.

## ARGUMENT

### I.    STANDARD OF REVIEW

The ultimate determination of whether an invention would have been obvious under 35 U.S.C. §103(a) is a legal conclusion based on underlying findings of fact. *In re Kotzab*, 217 F.3d 1365, 1369 (Fed. Cir. 2000). This Court reviews the Board's ultimate determination of obviousness *de novo*, but this Court reviews the Board's underlying factual findings for substantial evidence. See *id*.

### II.    ANALYSIS

The relevant factual inquiries in an obviousness analysis include (1) the scope and content of the prior art; (2) the differences between the claimed invention and the prior art; (3) the level of ordinary skill in the art; and (4) any relevant secondary considerations…." *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17-18 (1966). The mere fact that references can be combined or modified does not render the resultant combination obvious, unless the results would have been predictable to one of ordinary skill in the art. *KSR International*

18

*Co. v. Teleflex Inc.*, 550 U.S. 398, 415 (2007).  "If a person of ordinary skill can implement a predictable variation, §103 likely bars its patentability.  For the same reason, if a technique has been used to improve one device, and a person of ordinary skill in the art would recognize that it would improve similar devices in the same way, using the technique is obvious unless its actual application is beyond his or her skill."  *Id.* at 417.

> ### A.    The Board Erred When It Failed To Consider Evidence Rebutting The Board's Findings, Namely That Lee Does Not Provide A Reason To Select Trans-resveratrol For A Treatment For Alzheimer's Disease.

The Board erred because it did not consider evidence rebutting Finding of Fact 6.  A3.  Namely, the Board did not consider evidence rebutting the finding that "Lee teaches a method of treating Alzheimer's disease comprising administering resveratrol to a human in an amount from about 1 mg to about 1000 mg per day … (Ans. 6-7; Lee, col. 18, ll. 20-25)."  A3.

When a prima facie case is made, "the burden shifts to the applicant to come forward with evidence and/or argument supporting patentability."  *In re Glaug*, 283 F.3d 1335, 1338 (Fed. Cir. 2002).  Rebuttal evidence is "merely a showing of facts supporting the opposite conclusion."  *In re Piasecki*, 745 F.2d 1468, 1472 (Fed. Cir. 1984).

Here, the Board determined that the evidence rebutting Lee is irrelevant, because "a reference "is not limited to its exemplified embodiments," (A3-4) and because "Appellant fails to establish that Lee's resveratrol falls outside the scope of the term "resveratrol" as defined by Cavazza (see FF 3)." A5. The failure to consider the rebuttal evidence showing the opposite conclusion is reversible error. *In re Sullivan*, 498 F.3d 1345, 1353 (Fed. Cir. 2007).

Had the Board considered the evidence, it would have determined that no reasonable person would have determined that Lee's "resveratrol" is trans-resveratrol, because trans-resveratrol does not satisfy Lee's functional definition.

Lee defined "resveratrol" in functional terms as a specific inhibitor of COX-2 activity. A1498, claims 6, 12 and 18; A1494, col. 21, ll. 3-9. Along these lines, the examiner concluded that Lee claims "a method for treating immune or inflammatory conditions associated with Alzheimer's Disease … comprising administering … a specific inhibitor of [COX-2] activity, namely, resveratrol (see claims 6, 12 and 18)." A477; *see also* A1486, col. 6, ll. 27-35.

Appellant's expert organic chemist, Dr. Ensley, nevertheless, declared that "[b]ased on Lee … in its entirety, I see no data supporting the conclusion that 'resveratrol' is 'specific' to COX-2 as recited in claim 6." A516, ¶30. Thus, there is no reason to use Lee's "resveratrol" for potential treatments for Alzheimer's Disease.

The Board dismissed Dr. Ensley's declaration evidence, because, "Appellant fails to establish that Lee's resveratrol falls outside the scope of the term "resveratrol" as defined by Cavazza (see FF 3)."  A5. Yet Dr. Ensley declared that "Szewczuk has shown that resveratrol is not a specific inhibitor of COX-2, but inhibits COX-1 to a much greater extent…."  A516, ¶30.  Szewczuk's abstract states that "[Resveratrol (3,4',5-trihydroxy-trans-stilbene)] is a potent inhibitor of both catalytic activities of COX-1, the desired drug target for the prevention of cardiovascular disease, but only a weak inhibitor of the peroxidase activity of COX-2, the isoform target for nonsteroidal anti-inflammatory drugs."  A1295. Thus, the record establishes that trans-resveratrol is not "a specific inhibitor of [COX-2] activity" as functionally defined by Lee.

For these reasons, the Board errs to the extent its decision suggests that Lee's "resveratrol" is trans-resveratrol and that Lee provides a reason to choose a composition comprising trans-resveratrol for modification or combination for a treatment for Alzheimer's disease.  Indeed, Lee provides a reason not to select trans-resveratrol for a treatment for Alzheimer's disease.

As shown above, the failure to consider the rebuttal evidence is reversible error.  In view of the evidence of record, one of ordinary skill in the art would not

combine Lee and Cavazza to arrive at an embodiment falling with in the scope of the claimed subject matter. As such, this Court should reverse.[4]

### B.   The Board Erred When It Failed To Consider Evidence Rebutting The Board's Findings, Namely Cavazza Does Not Provide A Reason To Start With Trans-resveratrol For A Treatment For Alzheimer's Disease.

The Board erred because it did not consider evidence rebutting the finding that "Cavazza suggests the use of trans-resveratrol to treat Alzheimer's disease (FF 1-3)." A3. The Board determined the evidence rebutting Cavazza is irrelevant, because it "is not limited to its exemplified embodiments." A3-4.

The failure to consider the rebuttal evidence showing the opposite conclusion is reversible error. *Sullivan*, 498 F.3d at 1353.

Had the Board considered the evidence, it would have determined that no reasonable person would have started with a composition comprising trans-resveratrol in a treatment for Alzheimer's disease.

Choosing "trans-resveratrol" as a component in a composition for treating Alzheimer's disease is not one of "a finite number of identified, predictable solutions." *Cf. KSR International*, 550 U.S. at 421. Cavazza briefly mentions

---

4   In the alternative, at the very least, this Court should remand with a direction to consider the rebuttal evidence.

Alzheimer's disease.  A1512, claim 1; A1511, col. 3, ll. 6-9.  For example,

Cavazza's claim 1 reads as follows:

> 1. A therapeutic method of treating cerebral stroke, loss of memory,
> pre-senile dementia, Alzheimer's disease or preventing or treating
> disorders elicited by the use of neurotoxic drugs, which method
> comprises administering … (B) a trihydroxy or tetrahydroxystilbene.

A1512, claim 1.

Cavazza is directed not only to a method of treating Alzheimer's disease, but

also to a method of treating cerebral stroke, loss of memory, pre-senile dementia,

and disorders elicited by the use of neurotoxic drugs.  A1512, claim 1.  Clearly,

Cavazza is not exclusively directed to treating Alzheimer's disease. Nor is

Cavazza's component (B) particularly identified.

Cavazza teaches that a component of its compositions is "preferably 3, 4', 5-

trihydroxystilbene (resveratrol)," and Cavazza's definition of "resveratrol" lists,

among numerous others, trans-resveratrol.  A2.

Cavazza uses the term "resveratrol" in the formulations.  A1512, col. 5, ll.

12-65.  Cavazza defined "resveratrol" in a generic sense, i.e., meaning much more

than trans-resveratrol *per se*.  A2.  According to Appellant's expert Dr. Ensley, the

list of compounds falling under Cavazza's "resveratrol" is actually infinite, since

there are "theoretically an infinite number of esters of resveratrol."  A516-517,

¶34; cf. A724-725, ¶31.  Based on Cavazza's formulations, one of ordinary skill in

the art cannot determine the particular isomer, glycoside or extract Cavazza's generic resveratrol has mentioned. Thus, based on Cavazza's formulations, there is no reason to select a composition comprising trans-resveratrol for treating Alzheimer's disease.

Nor would Cavazza's examples (A1511, col. 3, l. 20 – A1512, col. 5, l. 11) provide such a reason, because, as discussed in the Facts section, *see supra* pp. 11-13, the examples in Cavazza are not predictive for Alzheimer's disease. According to Drs. Ensley, Bernick, and Toppo, the conclusions reached in Cavazza are neither relevant nor reliable for predicting potential treatments of Alzheimer's disease. *See supra* pp. 11-13. Nor are Cavazza's techniques relevant or reliable predictors of potential treatments for Alzheimer's disease. See, supra pp. 11-13. Thus, based on these tests, at the time of the invention a person having ordinary skill in the art would have no reason to believe that Cavazza's resveratrol would work for treating Alzheimer's disease. *See supra* pp. 11-13.

In its entirety, each of Cavazza's principles and techniques have not attained widespread acceptance for predicting potential treatments of Alzheimer's disease. A520, ¶46; A607, ¶21; A728, ¶41. Clearly, the principles and techniques of Cavazza cannot provide a basis for predictability.

The Board never challenged any specific factual findings in the declarations, because a reference like Cavazza "is not limited to its exemplified embodiments."

24

A3-4.  Although Cavazza is not limited to its exemplified embodiments, the fact that Cavazza's examples are neither relevant nor reliable for predicting potential treatments for Alzheimer's disease means that Cavazza's examples cannot provide a basis for predictability for potential treatments for Alzheimer's disease, let alone a reason to use Cavazza's resveratrol or trans-resveratrol for a treatment for Alzheimer's disease.

In addition, Cavazza's broad definition of resveratrol embraces a potentially infinite number of embodiments for treating Alzheimer's disease, cerebral stroke, loss of memory, pre-senile dementia, and disorders elicited by the use of neurotoxic drugs.  However, this broad teaching does not provide a credible basis for predicting potential treatments for Alzheimer's disease.  For these reasons, the Board's finding that "Cavazza suggests the treatment for Alzheimer's disease by administration of … trans-resveratrol …" (A2) is not supported by substantial evidence.

As shown above, the failure to consider the rebuttal evidence is reversible error.  In view of the evidence of record, one of ordinary skill in the art would not have chosen a composition comprising trans-resveratrol for modification in a way needed to arrive at the claimed subject matter.  As such, this Court should reverse.

## **CONCLUSION AND STATEMENT OF RELIEF SOUGHT**

For the reasons stated herein, the Board's decision affirming the examiner's rejection of claim 13-33 as obvious over U.S. Pat. No. 6,515,020 to Cavazza in view of U.S. Pat. No. 6,184,248 to Lee under 35 U.S.C. § 103(a) should be reversed.


Respectfully submitted,

___/s/ Sean A. Passino_____             dated January 25, 2013

Sean A. Passino

Benjamin J. Hauptman

Benjamin P. Kota

Lowe Hauptman Ham & Berner, LLP

1700 Diagonal Road, Suite 300

Alexandria, Virginia 22314

703-684-1111

Fax: 703-518-5499

Email: spassino@ipfirm.com


*Attorneys for Appellant Frank Toppo*

## **<u>CERTIFICATE OF COMPLIANCE</u>**

I certify under Federal Rules of Appellate Procedure 32(a)(7)(A) and

Federal Circuit Rule 28(a)(14) that this brief does not exceed 30 pages and the

brief uses a proportionally spaced 14-point Time New Roman font.


_____/s/ Sean A. Passino_____
Sean A. Passino

Lowe Hauptman Ham & Berner, LLP

1700 Diagonal Road, Suite 300

Alexandria, Virginia 22314

703-684-1111

Fax: 703-518-5499

Email: spassino@ipfirm.com

*Attorneys for Appellant Frank Toppo*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 25th day of January 2013, I served the foregoing Brief of Appellant on counsel of record by ECF and first class mail:

Raymond T. Chen
Amy J. Nelson
Jamie L. Simpson
Office of the Solicitor
United States Patent and Trademark Office
Mail Stop 8, P.O. Box 1450
Alexandria, Virginia 22313-1450

By:   _____/s/ Sean A. Passino_____

Sean A. Passino
Lowe Hauptman Ham & Berner LLP
1700 Diagonal Road, Suite 300
Alexandria, VA 22314
Tel:  703-684-1111
Fax: 703-518-5499
Email: spassino@ipfirm.com

*Counsel for Appellant Frank Toppo*

28

# **ADDENDUM**

Attached as an Addendum is a copy of the judgment appealed from:
*Ex parte Toppo*, No. 2012-007579 (BPAI Aug. 14, 2012)



### UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 11/491,718 | 07/24/2006 | Frank Toppo | 5125-001 | 6430 |

22429        7590        08/14/2012
LOWE HAUPTMAN HAM & BERNER, LLP
1700 DIAGONAL ROAD
SUITE 300
ALEXANDRIA, VA 22314

| EXAMINER |
|---|
| KIM, JENNIFER M |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1628 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 08/14/2012 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

*[handwritten:]* RECEIVED BY: SW
*[handwritten:]* 10-14-2012
*[handwritten:]* appeal to CAFC/request for reconsideration

*[stamp:]* RECEIVED
AUG 15 2012
Lowe, Hauptman, Ham & Berner

PTOL-90A (Rev. 04/07)

UNITED STATES PATENT AND TRADEMARK OFFICE

————————

BEFORE THE BOARD OF PATENT APPEALS
AND INTERFERENCES

————————

*Ex parte* FRANK TOPPO

————————

Appeal 2012-007579
Application 11/491,718
Technology Center 1600

————————

Before DONALD E. ADAMS, DEMETRA J. MILLS, and JEFFREY N.
FREDMAN, *Administrative Patent Judges*.

ADAMS, *Administrative Patent Judge*.

DECISION ON APPEAL

This appeal under 35 U.S.C. § 134 involves claims 13-33 (App. Br. 4;
Reply Br. 2; Ans. 3). We have jurisdiction under 35 U.S.C. § 6(b).

STATEMENT OF THE CASE

The claims are directed to a method of treating a human in need of
treatment for Alzheimer's disease. Claims 1 and 33 are representative and
are reproduced in the Claims Appendix of Appellant's Brief.

Appeal 2012-007579
Application 11/491,718

Claims 13-33 stand rejected under 35 U.S.C. § 102(b) as being anticipated by Lee.[1]

Claims 13-33 stand rejected under 35 U.S.C. § 103(a) as unpatentable over the combination of Cavazza[2] and Lee.

We vacate the rejection under 35 U.S.C. § 102(b) and affirm the rejection under 35 U.S.C. § 103(a).

*Obviousness*:

### ISSUE

Does the preponderance of evidence on this record support a conclusion of obviousness?

### FACTUAL FINDINGS (FF)

FF 1.    Cavazza suggests a "method of treating . . . Alzheimer's disease . . . compris[ing] administering to a patient in need thereof an effective amount of admixed or separately packaged . . . (A) L-carnitine . . . and (B) a trihydroxy or tetrahydroxystilbene", in a "weight-to-weight ratio range[] from 1:1 to 1:1,000" (Cavazza, col. 6, ll. 30-31 and col. 3, ll. 4-7; Ans. 6).

FF 2.    Cavazza suggests that "[c]omponent (B) is preferably 3, 4', 5-trihydroxystilbene (resveratrol)" (Cavazza, col. 2, ll. 59-60).

FF 3.    Cavazza defines the term "resveratrol" as "both trans-3,4'[,]5-trihydroxystilbene (*i.e. resveratrol proper*) and the cis isomer, the respective glycosides and extracts and powders containing resveratrol obtained from any suitable plant species" (*id.* at col. 1, ll. 61-65 (emphasis added); *see also* Ans. 6).

---

[1] Lee et al., US 6,184,248 B1, issued February 6, 2001.
[2] Cavazza, US 6,515,020 B1, issued February 4, 2003.

Appeal 2012-007579
Application 11/491,718

FF 4.    Cavazza exemplifies "a formulation comprising 5 mg resveratrol and 500 mg L-carnitine" (Ans. 6).

FF 5.    Examiner finds that "Cavazza teaches lower amounts of resveratrol but does not [t]each[, *inter alia*,] the higher daily amounts [or] dosing frequency" (*id.*).

FF 6.    Lee teaches a method of treating Alzheimer's disease comprising administering resveratrol to a human in an amount from about 1 mg to about 1000 mg per day, in single or multiple doses from 1 mg, 5 mg, 10 mg, *500 mg* or 1000 mg (Ans. 6-7; Lee, col. 18, ll. 20-25).

ANALYSIS

Based on the combination of Cavazza and Lee, Examiner concludes that, at the time of Appellant's claimed invention, a person of ordinary skill in this art would have found it prima facie obvious to administer trans-resveratrol to a human at "its known amount effective for the treatment of Alzheimer's disease" (Ans. 8).

Appellant provides separate arguments for the following groups of claims: (I) Claims 13-32 and (II) Claim 33. Claims 13 and 33 are representative. 37 C.F.R. § 41.37(c)(1)(vii).

*Claim 13*:

Cavazza suggests the use of trans-resveratrol to treat Alzheimer's disease (FF 1-3). Therefore, we are not persuaded by Appellant's contention that "there is no reason to select trans-resveratrol" from Cavazza's disclosure (App. Br. 21).

A reference is not limited to its exemplified embodiments. *In re Mills*, 470 F.2d 649, 651 (CCPA 1972). Therefore, we are not persuaded by

3

Appeal 2012-007579
Application 11/491,718

Appellant's contention or declaratory evidence[3] suggesting that Cavazza's examples are "not relevant to Alzheimer's disease" (App. Br. 21-25). For the same reasons, we are not persuaded by Appellant's contentions and declaratory evidence, regarding Lee's examples (App. Br. 27-29).

Appellant contends, with reference to the Ensley Declaration, that Cavazza's dosage range "is very broad" (App. Br. 25). "[W]here there is a range disclosed in the prior art, and the claimed invention falls within that range, there is a presumption of obviousness." *Iron Grip Barbell Co. v. USA Sports, Inc.*, 392 F.3d 1317, 1322 (Fed. Cir. 2004); *see also In re Geisler*, 116 F.3d 1465, 1468 (Fed. Cir. 1997) (Overlapping ranges support a prima facie case of obviousness). Therefore, the question is not whether Cavazza suggests a broad effective dosage range, but instead the question is whether the prior art relied upon by Examiner fails to suggest a daily dosage of trans-resveratrol that falls within the scope of Appellant's claimed invention (App. Br. 25).

While Cavazza fails to exemplify, or in Examiner's words - explicitly "teach", a daily resveratrol dosage in an amount between 200 mg and 1,000 mg; Cavazza suggests the administration of 500 mg of L-carnitine (FF 4; *Cf.* FF 5). Cavazza also suggests the treatment of Alzheimer's disease by administration of L- carnitine and trans-resveratrol at a 1:1 weight to weight ratio (FF 1-3). Thus, Cavazza suggests the administration of 500 mg L-carnitine and 500 mg trans-resveratrol, i.e., a 1:1 weight to weight ratio, for the treatment of Alzheimer's disease. This dosage of resveratrol is fully

---

[3] Declaration of Harry Ensley, Ph.D., executed January 28, 2010; Declaration of Frank Toppo, MD, executed February 16, 2011; and Declaration of Charles Bernick, MD, executed February 1, 2011.

Appeal 2012-007579
Application 11/491,718

supported by Lee (FF 6). Further, because Lee is not relied upon in isolation, but is instead applied in combination with Cavazza, we are not persuaded by Appellant's contention, with reference to the Ensley and Toppo declarations, that Examiner's reliance on Lee is "meaningless due to the range of compounds embraced by Lee" (App. Br. 26; *see* FF 6).

Lastly, we are not persuaded by Appellant's contention that "whatever Lee's resveratrol is, it is not trans-resveratrol" (App. Br. 29). Appellant fails to establish that Lee's resveratrol falls outside the scope of the term "resveratrol" as defined by Cavazza (*see* FF 3). Accordingly, we are not persuaded by Appellant's intimation that Lee's resveratrol falls outside the scope of Cavazza's definition of the term (App. Br. 29).

Arguments not made are waived. *See* 37 C.F.R. § 41.37(c)(1)(vii).

*Claim 33*:

Appellant's claim 33 is drawn to a method of treating a human in need of treatment for Alzheimer's disease (Claim 33). Appellant's claimed method *comprises* the administration of a composition *consisting essentially of* trans-resveratrol in a daily amount between 200 mg and 1,000 mg (*id.*).

Appellant appears to be of the opinion that claim 33 is somehow limited to the administration of a specific composition that consists essentially of trans-resveratrol in a specified dosage (App. Br. 30-31). We are not persuaded. In addition to the following, we incorporate our discussion with respect to claim 1 herein by reference.

Notwithstanding Appellant's contention to the contrary, the method of claim 33, is not limited to the administration of one specific composition,

Appeal 2012-007579
Application 11/491,718

but instead *comprises* the administration of a composition.[4] Stated
differently, the use of the transitional phrase "comprising" opens the method
of claim 33 to include not only the administration of (i) a composition
consisting essentially of trans-resveratrol in a specified concentration; but
also (ii) the administration of L-carnitine in a specified concentration. Thus,
claim 33 reads on Cavazza's suggested method, as modified by Lee, of
treating Alzheimer's disease, which comprises administering to a patient in
need thereof an effective amount *of separately packaged* (A) L-carnitine of a
particular dosage and (B) trans-resveratrol of a particular dosage (FF 1-4 and
6).

Arguments not made are waived. *See* 37 C.F.R. § 41.37(c)(1)(vii).

## CONCLUSION OF LAW

The preponderance of evidence on this record supports a conclusion
of obviousness. The rejection of claims 13 and 33 under 35 U.S.C. § 103(a)
as unpatentable over the combination of Cavazza and Lee is affirmed.
Claims 14-32 are not separately argued and fall together with claim 13. 37
C.F.R. § 41.37(c)(1)(vii).

## SUMMARY

We vacate the rejection of claims 13-33 under 35 U.S.C. § 102(b) as
being anticipated by Lee.

---

[4] See *In re Crish*, 393 F.3d 1253, 1257 (Fed. Cir. 2004) ("The reasonable
interpretation of the claims containing both of the terms 'comprising' and
'consists' is that the term 'consists' limits the 'said portion' language to the
subsequently recited" substance, "but the earlier term 'comprising' means
that the claim can include that portion plus other" substances).

Appeal 2012-007579
Application 11/491,718

We affirm the rejection of claims 13-33 under 35 U.S.C. § 103(a) as unpatentable over the combination of Cavazza and Lee.

TIME PERIOD FOR RESPONSE

No time period for taking any subsequent action in connection with this appeal may be extended under 37 C.F.R. § 1.136(a).

AFFIRMED

alw