# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

No. 2013-1077

(Serial No. 11/491,718)

IN RE FRANK TOPPO

Appeal from the United States Patent and Trademark Office,

Patent Trial and Appeal Board.

## REPLY BRIEF OF APPELLANT

Sean A. Passino

Benjamin J. Hauptman

Benjamin P. Kota

Lowe Hauptman Ham & Berner, LLP

2318 Mill Road, Suite 1400

Alexandria, Virginia 22314

703-684-1111

Fax: 703-518-5499

Email: spassino@ipfirm.com

*Attorneys for Appellant Frank Toppo*

# **CERTIFICATE OF INTEREST**

Counsel for Frank Toppo certifies the following:

1. The full name of every party or amicus represented by Counsel is:

    Frank Toppo.

2. The name of the real party in interest represented by me is:

    None.

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party represented by me are:

    None.

4. The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this Court are:

    Sean A. Passino
    Benjamin J. Hauptman
    Benjamin P. Kota
    LOWE HAUPTMAN HAM & BERNER, LLP
    2318 Mill Road, Suite 1400
    Alexandria, Virginia 22314

The following individuals filed papers in the USPTO. They are not expected to appear before this Court.

>Charles H. Thomas
>Daniel M. Cislo
>Sean D. O'Brien
>CISLO & THOMAS LLP
>233 Wilshire Boulevard, Suite 900
>Santa Monica, CA 90401-1211

Respectfully submitted,

__/s/ Sean A. Passino_____                    dated March 28, 2013

Lowe Hauptman Ham & Berner, LLP

2318 Mill Road, Suite 1400

Alexandria, Virginia 22314

703-684-1111

Fax: 703-518-5499

Email: spassino@ipfirm.com

*Attorney for Appellant Frank Toppo*

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................... i

TABLE OF AUTHORITIES ............................................................................. ii

I.  ARGUMENT ..............................................................................................1

   A.  The Board's Decision To Ignore Rebuttal Testimony Is Not Justifiable .......2

      1.  The Declaration Evidence Goes Beyond Lee's Exemplified Embodiments ...............................................................................................2

      2.  Trans-resveratrol Is Not A "Specific" Inhibitor Of COX-2 .....................4

      3.  The Fact That Trans-resveratrol Is Not A Specific Inhibitor Of COX-2 Is Relevant ...............................................................................5

      4.  The Fact That The Board Did Not Rely On Lee's Teaching Trans-resveratrol Is Not A Reason To Ignore Lee's Teachings In Its Entirety ............................................................................................7

   B.  Cavazza Alone, Or In Combination With Lee, Does Not Provide A Reason To Select Trans-resveratrol In The Treatment Of Alzheimer's Disease .....................................................................................8

      1.  Enablement is not the issue ..................................................................9

      2.  Toppo's specification teaches more about Alzheimer's disease than Cavazza .........................................................................................9

      3.  Cavazza Does Not Teach A Finite Number Of Choices ........................10

II.  CONCLUSION AND STATEMENT OF RELIEF SOUGHT .......................11

CERTIFICATE OF COMPLIANCE .................................................................12

CERTIFICATE OF SERVICE ..........................................................................13

# TABLE OF AUTHORITIES

**Cases**

Beckman Instruments v. LKB Produkter AB,

   892 F.2d 1547 (Fed. Cir. 1989) ......................................................................... 9

In re Sullivan,

   498 F.3d 1345 (Fed. Cir. 2007) ......................................................................... 1

Phillips v. AWH Corp.,

   415 F.3d 1303 (Fed. Cir. 2005) (en banc) ......................................................... 8

I.   **ARGUMENT**

Toppo's declaration evidence is relevant and was ignored by the Board. "When an applicant puts forth relevant rebuttal evidence, as it did here, the Board must consider such evidence." *In re Sullivan*, 498 F.3d 1345, 1353 (Fed. Cir. 2007). The Board's finding that Toppo's declaration evidence is "irrelevant" cannot be justified by the Solicitor.  Cf. Ans., p. 17.[1] The Solicitor's justifications of the Board's decision are not supported by substantial evidence and do not substantiate the Board's conclusion.  Ans., pp. 17-20.

Further, a person having ordinary skill in the art would not have selected the trans-resveratrol of Cavazza as a candidate for modification in the treatment of Alzheimer's disease.  The Solicitor never challenged Toppo's position that Cavazza's principles and techniques have not attained widespread acceptance for predicting potential treatments of Alzheimer's disease.  A520, ¶46; A607, ¶21; A728, ¶41.  Instead, the Solicitor concluded that Cavazza was enabled, Cavazza disclosed more than Toppo's specification, and the art was predictable.  Ans., pp. 20-22.   The Solicitor's conclusions are not supported by substantial evidence and do not substantiate the Board's conclusion.

---

1    Citations to the Joint Appendix are denoted as "A__", and citations to Solicitor's Brief are denoted as "Ans. __."

1

## A. The Board's Decision To Ignore Rebuttal Testimony Is Not Justifiable

### 1. *The Declaration Evidence Goes Beyond Lee's Exemplified Embodiments*

Toppo agrees that Lee's teachings are not limited to the exemplified embodiments. Ans., p. 17. The Solicitor fails to recognize that the declarations go beyond the exemplified embodiments of Lee. Cf., Ans., p. 17; A3-4.

It is true that a portion of the declaration evidence addresses the exemplified embodiments of Lee. For example, Dr. Ensley testified that Lee's exemplified embodiments are not human dosing models.

> Data in Figure 16B of Lee (Exh. 1) and related text (column 12, lines 5-13; column 28, lines 17-24) are not dosing models. These data are from a model which treats "cultured astrocytes or neurons" with "resveratrol" for 1 hour. **These data do not show the standard dose-response curves, and the concentrations ($10^{-6}$ molar and higher) are not typical doses for humans**.

A514, ¶21 (emphasis added); see also A721, ¶18. Elsewhere, Dr. Ensley declared that typical doses result in serum concentrations of $1\text{-}10 \times 10^{-9}$ molar in humans. A519, ¶42; see also A727, ¶37. No one would attempt to achieve serum doses in the $10^{-6}$ range or consider the higher dose data as enlightening.

Such evidence shows how one of ordinary skill in the art understands Lee's teachings about "resveratrol." But the declaration evidence addresses much more.

2

For instance, the Declarations of Dr. Ensley and Dr. Toppo characterize Lee's teachings as "meaningless," because in addition to the range of compounds (A513, ¶19; A720, ¶16) and the lack of dosing data (A514, ¶21; A721, ¶18), Lee teaches multiple indications besides Alzheimer's disease (A514-15, ¶¶22-25; A721-22, ¶¶19-23) and a toxic embodiment (A513, ¶20; A720-21, ¶17). Such voluminous disclosures render Lee meaningless to a person having ordinary skill in the art (A516, ¶32; A723-24, ¶29), and under *Sullivan*, such evidence should have been considered.

Furthermore, the declaration evidence supports the position that trans-resveratrol is not a COX-2 specific inhibitor (A516, ¶30; A723, ¶27), unlike Lee's findings that its resveratrol is a COX-2 specific inhibitor. A511, ¶14; A717-18, ¶11; A1486, col. 6, ll. 26-36. The Board erred in requiring Toppo to prove what is Lee's resveratrol, and what is not comprised within Cavazza's definition of resveratrol. A5. The burden imposed by the Board is unduly broad. It requires Toppo to prove what Lee's resveratrol is after proving what Lee's resveratrol is not. Because trans-resveratrol lacks the COX-2 specific inhibitor properties of "resveratrol", there is no reason to look to Lee for information about trans-resveratrol. Lee teaches away from using trans-resveratrol, because Lee teaches that compounds having other properties should be used.

3

Had the Board objectively read Lee, i.e., read Lee as a person having ordinary skill in the art, it would have understood that Lee teaches resveratrol and that its resveratrol is a COX-2 specific inhibitor. A person having ordinary skill in the art would have understood trans-resveratrol is not a COX-2 specific inhibitor (A516, ¶30; A723, ¶27), in fact it is a COX-1 specific inhibitor as will be explained below. In other words, a person having ordinary skill in the art reading Lee would have understood trans-resveratrol is not encompassed within Lee's objective definition of resveratrol.

### 2. Trans-resveratrol Is Not A "Specific" Inhibitor Of COX-2

The Solicitor makes a new argument that "the Szewczuk article does not suggest that trans-resveratrol is not a specific inhibitor of COX-2. To the contrary, Szewczuk expressly states that trans-resveratrol targets both COX-1 and COX-2." Ans., p. 19. The Solicitor incorrectly reads "specific" inhibitors.

Lee equates "non-specific inhibitors" of COX-1 and COX-2 to a species, like aspirin, which inhibits both COX-1 and COX-2 enzymes. A1489, col. 12, ll. 5-19. Lee also equates "specific inhibitors" of COX-2 to a species, like DFU (5,5-dimethyl-3-(3-fluorophenyl)-4-(4- methylsulphonyl)phenyl-2(5H)-furanone), which is one of the "[h]ighly selective COX-2 inhibitors." A1489, col. 12, ll. 20-32. Lee's claim 18 equates "specific inhibitors" of COX-2 to DFU and resveratrol.

4

A1498, col. 30, ll. 46-51. Thus, Lee defines "specific inhibitors" of COX-2 as those species that are highly, but not necessarily totally, selective.

Szewczuk defines "resveratrol" as trans-resveratrol, A1295, col. 1, and states the following:

> Finally, resveratrol was able to discriminate between the two COX isoforms because it only weakly inhibited the peroxidase activity of COX-2 (Table I) (2, 3). The mechanism by which resveratrol **selectively inhibits** the cyclooxygenase and peroxidase reactions of COX-1 is unknown.

A1295, col. 2 (emphasis added). Szewczuk claims that "[w]e have shown that resveratrol, and other m-hydroquinones, are selective mechanism-based inactivators of COX-1." A1304, col. 2.

The Solicitor errs in failing to read Lee and Szewczuk in their entirety. Rather, it looks for words to support a hindsight reconstruction. Had it read the teachings in their entirety, it would have understood that trans-resveratrol is a specific inhibitor of COX-1, not COX-2. Cf. A516, ¶30; A723, ¶27. The Solicitor is incorrect in declaring trans-resveratrol to be a COX-2 specific inhibitor.

> 3.  *The Fact That Trans-resveratrol Is Not A Specific Inhibitor Of COX-2 Is Relevant*

The Solicitor's third justification dismisses the important aspect that trans-resveratrol is NOT a COX-2 specific inhibitor. The Solicitor stated:

> Finally, whether or not trans-resveratrol inhibits COX-2 is beside the point because there is no question that Lee teaches resveratrol. Thus, even if Toppo were correct that trans-resveratrol does not inhibit

5

> COX-2, that would mean only that Lee's teachings pertain only to cis-resveratrol or Lee incorrectly identifies resveratrol as a COX-2 inhibitor.

Ans., pp. 19-20.

The question concerns the identity of Lee's "resveratrol." Not ignoring the prior art in its entirety, one discovers that Cavazza defines "resveratrol" as cis- or trans-resveratrol as well as an infinite number of esters. A516-17, ¶¶33-34; A724-25, ¶¶31-32. The choice is not a simple cis- or trans- selection suggested by the Solicitor's statement.

Indeed, there is a reason **not** to select COX-1 specific inhibitors. Together, Szewczuk and Lee teach that NSAIDs treat inflammation by inhibiting the inducible COX-2 enzyme. A1485, col. 4, ll. 46-47 ("In contrast, COX-2 is rapidly inducible in response to cytokines, inflammation, and injury."); A1296 (By contrast, COX-2 selective inhibitors (i.e. Celebrex and Vioxx) are used for the treatment of inflammation.); A1304 ("There has been little focus on the development of selective COX-1 inactivators because it is accepted that COX-2 is the desired target for NSAIDs.")

Lee also teaches that essential functions are constitutively controlled by COX-1. A1485, col. 4, ll. 43-46 ("COX-1 is constitutively expressed in most tissues; regulates the production of essential prostaglandins in kidney and gastric mucosa; and is essential for platelet thromboxane production.") A specific inhibitor of COX-1 targets and interferes with the essential bodily functions of

6

COX-1, without imparting a significant anti-inflammatory action (NSAID action) against the inducible COX-2 enzyme. This means, in the context of Lee, that a specific COX-1 inhibitor will interfere with essential bodily functions for, at best, a weak anti-inflammatory effect, i.e., the effect identified by Lee as important to its activity. A1489, col. 12, ll. 21-32.

The Solicitor addressed these points for the first time on appeal, thereby placing Toppo in an awkward position of addressing these issues for the first time on appeal.

      4.    *The Fact That The Board Did Not Rely On Lee's Teaching Trans-resveratrol Is Not A Reason To Ignore Lee's Teachings In Its Entirety*

The Solicitor's fourth justification is that an STN database entry assigned Lee the CAS registry number for trans-resveratrol rather than cis-resveratrol. Ans., pp. 18-19 (referring to A1120-25). The Solicitor cited other extrinsic evidence to link Lee's resveratrol to trans-resveratrol. Ans., p. 19. The Solicitor tries to use extrinsic evidence (outside the four corners of Lee) to equate Lee's resveratrol with trans-resveratrol. This is incorrect.

Further, the STN registry assignment (A1120-25) does not change the objective meaning of resveratrol defined by Lee.

Nor does the Solicitor's justification change the fact that the prior art must be considered in its entirety. Nor does it provide a reason to ignore the declaration

7

evidence, which explains that Lee identifies "resveratrol" as a COX-2 specific inhibitor.

Toppo asks this Court to resist using extrinsic evidence (here outside Lee) to change the meaning of Lee's term, because Lee provides an objective way to identify Lee's "resveratrol," i.e., Lee's resveratrol is a specific COX-2 inhibitor. This is important because trans-resveratrol is not a COX-2 specific inhibitor.

The Examiner's and Solicitor's approach justifies a hindsight reconstruction of the prior art, rather than searching for consistency between the extrinsic evidence and the single best source for determining the meaning of Lee's "resveratrol," namely, the description of Lee itself. Cf. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1321 (Fed. Cir. 2005)(*en banc*). Because Lee states in no uncertain terms that its resveratrol is a "specific" inhibitor of COX-2, Lee's definition is what should identify what Lee's resveratrol is and is not.

### B.     Cavazza Alone, Or In Combination With Lee, Does Not Provide A Reason To Select Trans-resveratrol In The Treatment Of Alzheimer's Disease

A person having ordinary skill in the art would not have picked the trans-resveratrol of Cavazza as a candidate for modification in the treatment of Alzheimer's disease. The Solicitor never challenged Toppo's evidence that Cavazza's principles and techniques have not attained widespread acceptance for

8

predicting potential treatments of Alzheimer's disease. A520, ¶46; A607, ¶21; A728, ¶41.

The Solicitor failed to argue against these points and failed to address Toppo's declaration evidence concerning Cavazza. Instead, the Solicitor merely concluded that Cavazza was enabled, Cavazza disclosed more than Toppo's specification, and the art was predictable. Ans., pp. 20-22. The Solicitor's conclusions are mistaken.

### 1. *Enablement is not the issue*

Enablement is not relevant to obviousness. "The prior art is prior art for all it teaches." *Beckman Instruments v. LKB Produkter AB*, 892 F.2d 1547, 1551 (Fed. Cir. 1989). The Solicitor seems to misapprehend this fact by turning a blind eye to the parts of Lee that teach away from using trans-resveratrol in a treatment of Alzheimer's disease as noted above. In any case, there is no reason to select trans-resveratrol as a starting point for treating Alzheimer's disease.

### 2. *Toppo's specification teaches more about Alzheimer's disease than Cavazza*

Cavazza does not teach more about Alzheimer's disease than Toppo's application. Cavazza's teachings about Alzheimer's disease are limited to two passages: claim 1 (A1512, col. 6, ll. 30-44) and the following statement: "The cerebral disorders caused by ageing prophylactically and therapeutically treated

9

according to the present invention include particularly cerebral stroke, pre-senile and senile dementia and Alzheimer's disease." A1511, col. 3, ll. 6-9.

It remains uncontested by the Examiner, Board, and Solicitor that Cavazza's examples are not probative or predictive of Alzheimer's disease. Cavazza's formulations are not unique to treating Alzheimer's disease as multiple indications are targeted.

Toppo's application, on the other hand, identifies one compound, the amounts, and unlike Cavazza, a mechanism of action.

### 3. *Cavazza Does Not Teach A Finite Number Of Choices*

Cavazza names cis- and trans-resveratrol but it also states that a potentially infinite number of compounds are also suitable for treating Alzheimer's disease, cerebral stroke, loss of memory, pre-senile dementia, and disorders elicited by the use of neurotoxic drugs. A516-17, ¶ 34; A724-25, ¶31. However, this broad teaching does not provide a credible basis for predicting potential treatments for Alzheimer's disease. Moreover, the evidence does not show that Alzheimer's disease is predictable. To the contrary, Alzheimer's disease "has no known cure." A15, ll. 6-7.

As shown above and of record, the failure to consider the rebuttal evidence is reversible error. In view of the evidence of record, one of ordinary skill in the art would not have chosen a composition comprising trans-resveratrol for

modification in a way needed to arrive at the claimed subject matter. As such, this Court should reverse.

## II. CONCLUSION AND STATEMENT OF RELIEF SOUGHT

For the reasons stated in support of Toppo, the Board's decision affirming the examiner's rejection of claim 13-33 as obvious over U.S. Pat. No. 6,515,020 to Cavazza in view of U.S. Pat. No. 6,184,248 to Lee under 35 U.S.C. § 103(a) should be reversed.

Respectfully submitted,

__/s/ Sean A. Passino_____                    dated March 28, 2013

Sean A. Passino
Benjamin J. Hauptman
Benjamin P. Kota
Lowe Hauptman Ham & Berner, LLP
2318 Mill Road, Suite 1400
Alexandria, Virginia 22314
703-684-1111
Fax: 703-518-5499
Email: spassino@ipfirm.com

*Attorneys for Appellant Frank Toppo*

11

## **CERTIFICATE OF COMPLIANCE**

I certify under Federal Rules of Appellate Procedure 32(a)(7)(A) and Federal Circuit Rule 28(a)(14) that this brief does not exceed 15 pages and the brief uses a proportionally spaced 14-point Time New Roman font.

\_\_\_\_/s/ Sean A. Passino_____
Sean A. Passino
Lowe Hauptman Ham & Berner, LLP
2318 Mill Road, Suite 1400
Alexandria, Virginia 22314
703-684-1111
Fax: 703-518-5499
Email: spassino@ipfirm.com

*Attorneys for Appellant Frank Toppo*

# CERTIFICATE OF SERVICE

  I hereby certify that on this 28th day of March 2013, I served the foregoing Reply Brief of Appellant on counsel of record by ECF and first class mail:

Nathan K. Kelly
Amy J. Nelson
Jamie L. Simpson
Office of the Solicitor
United States Patent and Trademark Office
Mail Stop 8, P.O. Box 1450
Alexandria, Virginia 22313-1450


             By: _____/s/ Sean A. Passino_____

             Sean A. Passino
             Lowe Hauptman Ham & Berner LLP
             2318 Mill Road, Suite 1400
             Alexandria, VA 22314
             Tel: 703-684-1111
             Fax: 703-518-5499
             Email: spassino@ipfirm.com

             *Counsel for Appellant Frank Toppo*